Brought to set the pace of the morning call, 218-1019 Joseph Tirio v. Janice Dalton and Brecker Press and John Doe on behalf of the Illinois Integrity Fund For the accountants, all the accountants, Ms. Natalie A. Harris For the appellee, Mr. Philip A. Prospects Good morning. Ms. Harris, if you're ready to proceed, you may do so. May it please the Court, I'd like to open today with a quote from the case Hadley v. Doe which is an Illinois Appellate Court case and focuses on the importance of the question that's at issue today Anonymous speech is a law and protective right of citizenship. Anonymous speech has enabled individuals to speak constructively regarding important public matters without the sort of fear of reprisal that might deter even peaceful discussions Discussions of public issues as well as debate regarding candidates' qualifications are integral to the government established by our Constitution Political speech will occasionally have unpalatable consequences, but our society gives greater weight to the value of free speech than the danger that speech will be misused Thus, an author is generally free to decide whether he wishes to disclose his true identity and his decision not to do so is an aspect of the freedom of speech protected by the First Amendment What we have today is a question about the sanctity of anonymous speech I have one additional quote to lead with that refers to the relevance of this particular issue to this moment in time and it's from the United States Court of Appeal to the Second District in their session just earlier this summer in the case of Knight v. First Amendment Institute v. Donald J. Trump At the conclusion of their decision, they wrote, We write at a time in the history of this nation when the conduct of our government and its officials is subject to wide-open, robust debate This debate encompasses an extraordinarily broad range of ideas and viewpoints and generates a level of passion and intensity the likes of which have rarely been seen This debate, as uncomfortable and as unpleasant as it frequently may be, is nonetheless a good thing We remind the litigants and the public that if the First Amendment means anything it means that the best response to disfavored speech on matters of public concern is more speech and not less So we have these broad constitutional principles which we acknowledge and we all respect but nevertheless we come down to the specific facts of this case So the specific facts of this case relate to anonymous speech in the context of a political campaign Specifically what we're talking about here is a Rule 224 petition that was filed by a government official, Joseph Tirio who was also running for a second government office, that clerk of McHenry County at the time he filed the petition and at the time of the elections at issue he was the current recorder of deeds That 224 petition was intended to disclose the identity of anonymous speakers who had adopted the alias known as the Illinois Integrity Fund The Illinois Integrity Fund produced an advocacy piece empathetical to the positions that Mr. Tirio had taken in office as the county recorder Specifically Mr. Tirio ran his campaign to eliminate the recorder's office He was a small government candidate, he was a fiscal conservative and yet while in office as the recorder he oversaw a recorder's office in which the automation fund surplus ballooned to $2.5 million That's a good way to call it, automation surplus fund Is that a little different than a slush fund? I think slush fund can have a lot of different meanings I think the reason that slush fund is an appropriate way to describe the automation fund surplus is because of the various definitions that a slush fund can have A slush fund as is undisputed in the record can have various meanings including a fund that is not earmarked for any specific use, an undelegated fund Well it certainly could, but what about starting with the dictionary definition The Merriam-Webster dictionary defines slush fund as follows A fund for bribing public officials for carrying on corrupt propaganda Does that sound like that should be protected speech? That certainly is one definition of slush fund, but one of the reasons we're here But that's a dictionary definition, that's a common, don't we in the case law frequently announce decisions where we look to the dictionary definition of the term for guidance Don't we do that all the time in our decisions? We do do that all the time and I believe the dictionary definition that Mr. Prozenz himself cites in his complaint includes the term often, sometimes, that it is sometimes used for that We also cite and have several references in our record to several other dictionary definitions that have much broader, less derogatory meanings Is this definition that you're looking at versus the definition that Justice Hudson just identified Does it make a difference how that definition is identified? Like with a person who has a mask and a jail outfit? I think for the purpose of deciding whether or not the statements at issue here are actionable fact or protected opinion, I think the answer is yes, that we should consider it in the context of the mask and the other content, but I would assert that by considering the context that it appears in here it actually advocates in favor of my position that the statements at issue are in fact not actionable fact but they are protected political opinion But how could they? Let's just talk about how does that help you because if you look at the context with the mask and we're talking about a slush fund, does that convey that he's not corrupt or does it convey that he probably is corrupt? Well, as an aside, to say that someone is corrupt is not actionable defamation per se It doesn't accuse anyone of a direct crime The court below held that calling you crooked, which is akin to corrupt, is in fact not defamatory per se But you should be arguing there's some sort of an innocent construction that could be made I think innocent construction is not the argument I'm making at the outset The argument I'm making at my outset here is that this is protected opinion and in order to determine whether or not language is protected opinion, we have to look to four factors The third and fourth factors that are the most important factors under the Illinois case law in fact do look precisely at the context. There are two levels of context The first level of context that you look at is called the literary context and I like to refer to that as sort of the small context which means the context of the tenor and tone of the actual piece itself And so if we look at the literary context of these particular flyers you will see that there is inflammatory language throughout There is an exclamation point with a triangle around it like you'd use for hazardous waste There's warning. There's vote no on Joe Tirio. There's bright warning colors like red and yellow There's exclamation points So, and there's also references throughout that this, the literary context of this particular piece is certainly one of debate. It is the lead up to two sides of an argument What's to debate? I mean, there is no debate based upon what Even though, you know, we here at the state don't have colored printers so we don't get to see some of those vibrant colors as you've just described We have black and white printers So, you know, if the colors are that bright and the signs are that obvious what are you debating? You're saying this is the fact We are, it's clear, so that gets me actually, it's a nice lead into the second context which is not just do we look at the tenor of the actual piece itself We look outside the piece and see what was the general, more social, political context that the piece showed up in The Ullman case that these factors are based on lays it out nicely It makes the comparison between are we listening to a soapbox orator or are we listening to, are we reading a monograph? I don't even know what a monograph is, but it sounds to me like it's some sort of academic work So when we shift It's also called a white paper sometimes Alright, so if we have sort of two sides that we can look at when we're talking about the more general social context Are we talking about a soapbox orator here or are we talking about a white paper? The Ullman factors would say that if we are talking about a context that's more equivalent to a soapbox That tells you that the advocacy going on is indeed one side of an argument for which there is certainly another side While it's not necessarily reflected here, it's obvious that this is, to anyone who reads it That it is being circulated and it is intended as advocacy in the context of the Republican primary in 2018 Which Mr. Theriault admits was the context that these were circulated in And if we take a look at the language here when you say hey these are facts, there's nothing on the other side That's obviously not what the average reader would look at The greater social context of these, namely the vigorous campaign debate Is obvious in the urgings to vote no against Joe Theriault The suggestion that he's not right for McHenry County That suggests that the advocacy or the one side of the debate is vote no on Joe Theriault Vote somebody else in the Republican primary Because he does not represent the ideals of the Republicans or the advocacy position of the Illinois Integrity Fund Counsel, let me ask you a question about one of the overarching ultimate issues in this case Sure When we consider the minimal pleading requirements necessary for alleging actual malice In what light do we look at the pleading? In the light most favorable to the plaintiff or in the light most favorable to the defendant? In order to analyze whether or not there's been sufficient pleading We look at the light most favorable to the plaintiff Correct And whether or not he has alleged facts from what including facts incorporated by reference Whether or not he has alleged facts sufficient to make an inference That the publisher, namely the Illinois Integrity Fund Knew or should have known at the time of publishing That the facts set forth in the complaint are false That's correct, but again, isn't the light most favorable to the plaintiff? Doesn't that have some meaning? It certainly does, but I would say that the plaintiff in this particular case Has pled himself out of a favorable interpretation that it would allow him to have pled actual malice I think as the court knows, Mr. Tirio was initially, his petition was dismissed Because he failed to sufficiently allege actual malice He was given the opportunity to re-plead And what he added were references to public documents that he claimed Because they were public, those documents were known to the public And therefore anyone who saw those documents would have known or should have known That the statements in the flyers are false The problem with those allegations are that the public documents that he referenced In fact, the facts that he added to his amended petition do just the opposite The public documents that he referenced include the budget The reports that his office made to the county board And the treasurer's report However, if you look at each one of those documents As a threshold matter, there is no reference in any of the documents That the recorder's office submitted to the county board That indicates the existence or an amount of the automation fund surplus You say in your brief that it's very difficult to find that information And once you do, you don't understand it You just stood here and said that it mushroomed, ballooned Whatever you want to use the phrase, by 2.5 million dollars How did you find it? How did I find it? Or your clients, how did they find it? I'm not certain how my client found it Well then you're making an allegation that maybe isn't true No, I'm just saying I don't know the route to which my client came to that information But what I can say is that the treasurer's report Which is outside the purview of the recorder's office The treasurer's report lists 999 different funds And if you knew where to look Or if you knew that a fund balance for the recorder's office While nowhere in any of the recorder's office documentation Might happen to appear randomly in the treasurer's report And you knew that the code for that fund was on page 7 of 11 at line 75 You could interpret the fact You could learn that there was a 2.5 million dollar surplus But what you wouldn't know and what no one could know Is how that money was spent by the recorder's office There is nowhere in any of the documentation Neither alleged or attached That indicates the manner in which any of the surplus money In the automation fund for the recorder's office was spent However, Mr. Tirio does admit that that money was in part spent To fund his non-essential travel to New Mexico in the dead of winter He also does admit that that money Whose term is non-essential? Non-essential is my term And I use that to characterize having experience And I think the court below acknowledged that These sort of industry conferences are a hybrid, right? Why is it in New Mexico in February As opposed to, you know, Michigan Likely because there's an element of respite From everybody's daily activity People go there That doesn't mean it's non-essential I'm going to a conference in September in Chicago On the justice system Is that non-essential for me? I don't think the issue with being non-essential Is essential to my argument My point is But you're using that term rather liberally Non-essential, non-essential If it isn't critical to your argument Why are you using it? I use it because I think I want to underscore What that trip was That that trip wasn't Mr. Tirio Doing his day-to-day duties As required to maintain The recorder's office Or to update Or to administrate Or to oversee the automation Of the McHenry County Court Service I hate to fall into this But what was the purpose of the conference? What was it entitled? What was the ostensible subject of the conference? The conference was indeed An industry conference for recorders Okay, well Why on the surface is that not essential? Because I think everyone is capable Of doing their job And continuing with their day-to-day responsibilities Without having what I would call An added bonus of being able to engage In industry exercises That allow you to perhaps Learn new things But it's perfectly possible To continue doing your work Well maybe you want to call My presiding judge and tell him that Because I don't understand the argument Yes, you're not going to a warm location Yeah, you know It doesn't Your argument is Got a little out of hand When you started calling things non-essential When you've never been to them How long had Mr. Tirio been The recorder at the time he Attended this activity? I believe since 2016 It was his first term I believe that's correct That's correct And there had been a Someone there before him And he was not that person And he wasn't even in the office During that time, was he? I'm sorry When beforehand Before he became the recorder Was he anyway affiliated With the recorder's office? No, not that I'm aware of I think the point that I'm trying to make though Is that there was no way from anyone No way that anyone in the public Would know that The recorder's office Automation fund surplus Was used by Mr. Tirio For travel To this particular event In New Mexico And for someone who campaigned on Eliminating the office I think the point of the Illinois Integrity Fund Is what this man is doing Is inconsistent with what he promised you This is a small government Fiscal conservative Who promised to eliminate the office While in office he's spending An exorbitant surplus To travel to New Mexico You make the decision About whether this is someone you want to vote for Let me ask you a question One of your One of your arguments here today Is that the trial court erred In granting the 224 petition Correct Is that moot? At this point? I mean, weren't the names turned over? You raise an interesting point And I believe that in fact They may be moot But I believe that the public interest exception Would apply here And I can refer to the case Of People v. Palacio Which is Almost analogous to the situation That we have here In People v. Palacio One of the appellants was a reporter By the name of James Day Who wrote an article about a trial A few days after the jury convicted the defendant And in his article He cited the prosecutor's closing argument The defendant then filed a motion For a new trial Citing the prosecutor's closing argument And attaching Mr. Day The reporter's article The defendant then subpoenaed the reporter To testify at the hearing on the post-trial motion And the reporter filed a motion To quash the subpoena Which the court denied The basis for the motion to quash Was that the information that was going to be sought By the subpoena in the post-trial proceedings Would have been protected by the Illinois reporter's privilege Or by the special witness doctrine And that the reporter was entitled To keep that confidential So the reporter moved to quash That motion was denied The reporter did appear to testify He repeatedly objected during the testimony Again, a final effort To try and avoid Disclosing the information But the judge overruled  So the reporter, rather than Suffer the consequences of a contempt Did, in fact, answer the questions And divulge the information When that case went up on appeal The defendant made the very same argument Isn't, in fact, your appeal On the motion to quash moot Because you gave up the information You testified under the subpoena The cat is out of the bag And we can't put it back in And the court said that that isn't the case That there are four Elements, four factors We looked at to see whether or not This public interest exception to mootness Applies, and those are The public nature of the question The desirability of an authoritative Determination for the purpose of guiding Public officers, the likelihood That the question will generally recur That the case involves An event of short duration which is capable Of repetition yet evading review So, on decision, the court said No, in fact, the appeal on the motion To quash is not moot Even though the reporter did testify and divulge Because The public nature of the question before us In that case, subpoenaing a newspaper columnist To testify against the wishes regarding A column he wrote about a case Is beyond question. The idea of Sort of the public dissemination of information Is indeed public, similarly here I think we're familiar with all the elements I can apply them here. So here The question of forcing an anonymous political advocate To have her identity Disclosed against her wishes In possible violation of the First Amendment Is indeed public in nature So in any event, the answer To Justice Shostak's question is You are not asking us to find this moot In light of subsequent developments. Is that correct? That's correct. In light Of public interest Exception. That is correct. I would While it may be moot, I believe that the public interest Exception applies in this case The standard of review in whether or not The court erred in Granting the 224 petition is What? Denial. It is? Yes. If it's on a question Of law, which it was here I argue that all my Defenses were law-based defenses And therefore, if the decision Is based on a question of law In other words, whether it's actual defamation It is to know What about And the 615, which is also part of this? Similar. It's the same You'll have an opportunity For rebuttal. Thank you very much Mr. Prosnitz Good morning We're going to get into your argument Because obviously you know it's hanging in the air Does this case moot? Good morning It's the position of the petitioner It is moot  To attack on the motion to dismiss The 615 The 615 motion Meaning it was a 615 motion It was partially granted We haven't completed actual malice There was a motion reconsidered The 615 We believe the head is out of the bag The printer was told he had to name names He had six days He chose not to ask for an emergency relief But he came back into the courtroom And named people that were involved In the Elementary crime Suits have been filed And the trial court is waiting For a ruling from the appellate court Those suits that were filed Are civil suits There's a civil suit file Which lists the individuals that were disclosed And should You need to do discovery And discover further individuals You can do that in civil discovery Correct? Correct, but we've been staying So we filed discovery asking That two people were clearly named by the printers Involved with the Illinois Integrity Fund There's this Notion another individual might be involved The county board president, Jack Franks And we filed suit With respondents in discovery Include the printer and Mr. Franks The two named individuals are defendants We filed discovery asking Comprehensively across the board Who are the members of the Illinois Integrity Fund And the trial court, Judge Bush I think correctly, prudently, cautiously Has decided to wait Because he recognizes that the 615 motion will again be Litigated in front of the appellate court And he's asked us point blank If this court were to find that The 615 motion to dismiss Should have been granted Judge Costello's analysis over the Seven, eight months that he had This matter is flawed and wrong On a de novo standard We don't meet the minimum requirements Of a 615 motion It's going to obviously be a big broadside To the trial case Mr. President, there's a reason for Mike We're being broadcast, so you need to stay geared Thank you, Judge Let me just interject this I understand there's a sensible basis to argue it's moot But she raises the public necessity Exception, why wouldn't that Be something that we could still address In light of that factor In all candor, I think There's a First Amendment potentially issue here Our position, obviously, it's defamatory And defamation is never protected by the First Amendment But because it's been raised Rather than run from it Why not address it? Because we're so Confident In our position that Yeah, mootness Clearly is present But we can bend over backwards once again And address this because we're confident And Your Honor, not only But it's going to rear its head again I'm sorry? You're confident it's going to rear Its head again in the future, too Well, it'll be interesting You're confident in your position I am But are you confident, as she, that this is Going to come up again, maybe in the future In another political campaign Presumably, but there's always This is not cutting edge law Right And robust Vulgar speech You know, it's part of being An American, and we're not trying to take away Anybody's fun But there are exceptions There are exceptions, and when it crosses the line into defamation Getting back to the question Again, so you also As the plaintiff, you are not asking us to find this case, are you? No I mean I suppose the Court could consider it But if the Court Were to, for policy reasons And public interest reasons, because of the First Amendment Because the 615 is going to Probably be re-urged in the trial court Or parts of it In a motion for summary judgment We don't I don't want to completely abandon it, but I recognize It's not a strong issue, and there might be Compelling, valid social reasons Beyond that, but one thing that Justice Hudson brought up I just want to Reemphasize, and I stated it in my Brief, so the standard of review Is not only viewing the lights In the light most favorable But, as we stated The Saunders v. Michigan Avenue National Bank case, the standard for review For a 615 motion to dismiss Is whether the complaint sufficiently states A cause of action And the merits of the case Are not considered So, we've gotten into a real Slippery slope here, and suddenly we're having A mini-trial Of everything, because we believe That we have more than adequately Pled fully Completely If we Use the standards You know Obviously, the cookbook is Hadley This court decided Hadley Justice Burkett Dissented on procedural reasons, but we started Out with a 224, and I think that would Address Justice Burkett's Concern, but I think there's a cookbook There, they certainly When it was decided that Referring to somebody as if they're referring to Sandusky is criminal Well then Crooked Jotario having a Secret taxpayer funded slush fund Which again, I would encourage the court not to Cut into small packets Of analysis, and what's wrong with a slush? You know, what's wrong With a fund? It has to be read in Its entirety But Hadley really They didn't read Hodges in its entirety I mean, Hodges was the Caption In Hadley? Hodges Okay Versus Oklahoma Oh, that's right That was just a caption So they didn't read it Precisely But the point I was Again, was making was The examples that we have before us Of the requirements to satisfy New York Times versus Sullivan It seems that we have more than adequately met When we look at Corsi, when we look at Colson When we look at Weber Versus Woods In Colson it was merely enough That there was an allegation That the defendant stated it Quote, knowing it to be false Statement was made with malicious willful Intentionally We have highlighted in our proposed complaint Found at C-211-234 Through the record Ample evidence That somebody knew Because there's a circular argument here The automation fund is secret But yet they know all about it Yet it's secret, yet it's hard to disclose Yet they know all the ins and outs of it And the fact that it was used for a property Records convention in Albuquerque Where my client stayed down the street For three days, submitted bills for Forty-nine dollars in food And it's being characterized that And the standard would have to be That no reasonable jury could find Anything other than that was Clear evidence that Reading my allegations here No jury could find anything else This was a loan dollar This was a vacation It's a property records association But again, it lends to the fact that There was an insider Somebody knew the information going on here Well, the part of your brief Likewise was that these funds Are public This is a user-funded office And not funded necessarily By county funds Although the building is part of the county And I assume they're paying for the electricity So there's some And hopefully the air conditioning So there's some issues about Other funding But of these four funds How do we find that automation fund? So A couple things First If every department was to report Balances, it would be a mismatch We would never know Because we'd be putting the dipstick in At various times during the month So rightfully so, by all my state law Balances of funds Are reported by the treasurer And he does that And that is done monthly It's part of the county board packet It's part of the county board record It's public knowledge There are multiple references Not only to the automation fund But what it's all about in the public records And that's referenced in our complaint And it's referenced in our argument as well So The state's attorney The public defender They don't report balances They will report on a monthly basis Monies that they spend Expenditures And revenues But they don't report balances at all So that's But how do we find the fund? A public record There are lots of automation funds these days Are these automation funds somehow lumped together? Or are they all Like the clerk has an automation fund The recorder has an automation fund Are they all separately identified? To my knowledge, and I am not an expert To my knowledge, I'm only aware of the automation fund Associated with automating Records For the recorder of deeds It's set up by state statute That in order to automate Records, the county board Can set the rates Set the funds The county board oversees the whole shebang Your honor, I'm unaware of any other automation funds In McHenry County Is there a Is there a name on this treasurer's report? Or is it a number On the treasurer's report? Is it 933 Or 1054 I can't be 1054 Because she said there aren't that many funds But they're 999 or something My recollection It's in my brief We do In The FLE's brief We do reference Exactly the page of the county treasurer And exactly the line item And to the best of my recollection It references The recorder of deeds automation fund But Again I'm going to re-argue it again There's something circular in saying Spending all this time arguing the automation fund And describing it as a slush Clearly the authors of this piece Knit Now they're claiming that The claim that Crooked Joe Terrio Has a secret taxpayer funded slush fund Is really referring to the automation fund Clearly the folks that wrote this That printed this produced it And then went on to say that he's using that Taxpayer funded slush fund for vacations To hire cronies And then has pictures of You know, ocean views There are no oceans in Albuquerque, New Mexico Ocean views and chests of money They knew exactly that which they were speaking So it seems sort of disingenuous To now say, oh my goodness gracious How could we possibly have known that this exists It's so hard to find It's not, it's reported monthly And it's out there And it's completely controlled by the county board They set the rates We have pled, a well-pled Allegation we have made is The rate was set up by the county board They oversee it, they can change it, the county board can modify it It's comparable to other counties Those facts must be taken As well-pled But yet we are in a lengthy Repetitive argument And hashing Over the minutia of the automation fund That segues into what I wanted to ask you You know, we've asked you a lot of questions That dealt with sub-issues But if somebody were to ask you to summarize Why the trial court's order should be affirmed Can you tell us that? I shall Um It is our position, Your Honor That the 224 petition Is meant to Allow us for the pre-trial discovery To find out who's being tortured And we review that Under what standard? I believe that My opponent correctly stated I believe it's de novo because the underlying issue At the end of the day is de novo On the 2615 So I think that's going to be the entire matter So there's no disagreement or quarrel there Um But Under Rule 224 The prophylactic Provision is that Because it's not written in the statute But the courts have said it and it makes good sense So that willy-nilly people aren't Being disclosed And run down Would Please give us a proposed lawsuit And we're going to scrub it To a 2615 standard to make sure it's okay So we proposed a Lawsuit It's lengthy And again, at the pages that I've Previously referenced, C211 to C234 So it's a 23-page complaint We did not go Through all of the Six sides of the three flyers We knew that we'd have litigation We knew that we'd be embroiled in this So we picked out the most egregious language And put it into a Proposed complaint And it has been well scrubbed below by Judge Costello Who spent many hours and much time And emotion, emotion reconsidered And he comes to the conclusion Which is not unreasonable That at the end of the day If you say against a public official That he has a Taxpayer Funded slush fund From which he is Using that to hire cronies and take Vacations with an S That's accusing him Of a crime, that's accusing him Of a theft and an official misconduct And at the end of the day Using The 615 standard It meets the minimum requirement Yeah We will take all Well pled facts as true And consider them in the light most Favorable to the plaintiff And whether the plaintiff has alleged sufficient facts Which it would entitle to him relief And he said yes Also one point that I just want To make sure Because I don't have the last Opportunity to speak There was an allegation in the reply brief That we waived an argument That Tiria committed a theft Nothing could be further From the truth In the proposed complaint Which is found starting at Seat 216 We reference to the allegation of theft In paragraph 23, 45, and 67 It is also In our petition You can finish your thought Thank you your honor It's also contained in our Petitioner's response to the 2615 motion found at C359 It's found at C368 We raised it at oral argument We raised the issue of people versus Price, a young lady Went to Chicago to see a Barry Manilow concert And was charged And convicted of both Theft and official misconduct Her previous plea to the theft did not Or attended a bad concert Exactly It was part of our oral argument On August 23 of 2018 Also found at C403 C428 Petitioner's response to the Respondent's motion to reconsider the motion To dismiss, we raised it at C433, C434 And again At the August 26, 2018 Hearing, we again argued It is referenced At 465 So at the end of the day Our position is The standard of the 615 Has been met, this is defamatory It should not be Wrapped in the first amendment It's beyond that protection We ask that the 615 motion to dismiss As ruled by Justice Costello be Affirmed Thank you your honor Ms. Harris In response to what Mr. Prozant said He vigorously indicated That the recorder's office Never reports fund balances To the county board When asked How The automation fund Surplus was Discoverable by the public He generally said it was out there As a public record, but to me He clearly skirted the question And that is because the answer is There is nothing that the recorder's office Publishes or produces or gives to the county board That reflects The recorder's office Automation fund surplus He indicated that that's because Is the automation fund Identified In that treasurer's report Yes And in fact The recorder's office Does transmit Communicate The balance of other funds In its reports In the same report It does not include The automation fund surplus So I'm looking at the Illinois Housing surcharge fund That is within the revenue report That the Recorder's office Submits to the county board It's at the record C-263 And it includes a fund balance That is not included In the corresponding page For the automation fund Moving on to a few other points That Mr. Prozant made I think it's important to remember Here that yes On a 2615 certainly We do interpret the facts in the light most favorable To the plaintiff but when we're dealing In the world of the First Amendment There are multiple legal Defenses on the pleadings To allegations of defamation And that's because it is rooted In the First Amendment That is to avoid a chilling of speech By lawsuits that don't meet The very high standard For defamation against a public official And here in particular I think the argument Which is a legal argument That the statements at issue here qualify As protected political Opinion have really not been Rebutted here today That decision can be made as a matter Of law and I believe It applies as I began to talk About earlier there are the four Elements of opinion As stated in Ullman and as Adopted here in Illinois And the statements at issue here Qualify under each One of the four elements The first element is the precision of the statement I think just the fact that we've gone back and forth So much about what in fact Does a slush fund mean Goes to Underscores the idea that the word slush fund Isn't a precise word It has multiple meanings That's one factor under the case law We cited in favor of calling an opinion But don't you take the term slush fund And look at it in totality Of all of the other statements I mean Kind of like the case that I had mentioned The Oklahoma case Where it was just In the caption and then The article read something That was different so therefore You could not impute that slush fund Meaning on the article But in this particular case you have the flyers That's in there With a guy with burglar Mask on Et cetera et cetera Don't we take that and look at it all together We do and I think we definitely Consider that and because of the nature Of the surrounding Content of these flyers This would be element three and four That the fact that we have A cartoon burglar The fact that we have chests of money This is all rhetorical Hyperbole This is mudslinging This is the bread and butter Of political opinions Bear with me here I just have Hadley Versus Doe Comments that are no more than rhetorical hyperbole Vigorous epithets Lusty and imaginative expressions Of contempt and language Used in a loose figurative sense Have all been accorded constitutional protection So in essence are you saying That none of these statements you're now telling us Are in any way Would qualify as factual assertions In the context Which is key right So the Olman case and the Illinois cases on opinion Which follow Olman Say that in order to determine Whether a statement is factual You have to figure out How is it interpreted by the viewers In other words when a voter Got this card Did they think they were looking at a white paper Or a monograph Or did they know that they were looking at something That on its face definitely demonstrated That it was part of a political debate And in the bigger context Was certainly one side of a bigger argument Were they on notice To take the imagery The words, everything that was said there With a grain of salt And understand that what is being inserted here Is not necessarily fact But political opinion To be taken with a grain of salt And that's the kind of opinion That's protected by the first amendment Isn't that a lot of money to spend On political flyers To be taken with a grain of salt I mean certainly One would hope that you're going to find Some Voters who are going to buy into it I mean I think we've seen that In the last several years I mean people buy into Conspiracy theories Or buy into hyperbole As you're saying I think it has been since the beginning of time For better or for worse The basis for our democratic elections That people are allowed to stand In the public square And spew their vigorous Beliefs and thoughts And once you start telling people That you can't do that Again until and in such You can demonstrate that The statements that are being Stated are false Anything shy of False factual speech That is vigorous political opinion Has to be Forbidden You cannot pick and choose It frankly is the most ugly speech That warrants the highest Period of protection Thank you Thank you counsel for your arguments this morning We will indeed Take them under advisement And we will issue a decision in this matter in due course Thank you very much We're going to stand in recess To prepare for our next case